**STATE, Plaintiff-Appellee, v. BROADWELL et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23837.   Decided July 11, 1956.

Frank T. Cullitan, Pros. Atty., Dennis J. McGuire, Frederick W. Frey, Asst. Pros. Attys., for plaintiff-appellee.

Edward C. Stanton, Joseph R. Slemmons, for Robert Broadwell, Walter I. Krewson, for E. M. B. Ownen, for defendants-appellants.

## OPINION

By HURD, J:

This action originated in the Court of Common Pleas of Cuyahoga County where the defendants-appellants were indicted under §4731.47 R. C., which reads as follows:

"No person shall make, issue, or publish, for the purpose of sale, barter, or gift, a certificate, diploma, or other writing or document falsely representing the holder or receiver thereof to be a graduate of a

medical school, college, or educational institution of medicine and entitled to the powers, privileges, or degrees thereby pretended to be conferred, or sell or dispose of, or offer, to sell or dispose of such diploma, certificate, writing, or document containing such false representation or use his name, or permit it to be used, as a subscriber to such false and fictitious diploma, certificate, writing, or document or engage in the practice of medicine and surgery under and by virtue of such fraudulent diploma, certificate, writing, or document." (Emphasis added.)

The indictment contained two counts. The pertinent parts of the first count are as follows:

"1. . . . Do Find and Present, That Robert Broadwell and E. M. B. Owen on or about the 22nd day of September 1953, at the County aforesaid, unlawfully and fraudulently published and offered to sell one Joseph M. Centanni a Diploma in Homeopathic Medicine for the sum of $1500 without examination, attendance or study, and that said Diploma would represent the said Joseph M. Centanni to be a graduate of a Medical School and entitled to the powers and privileges thereby pretended to be conferred and did further falsely represent that said Diploma would admit the Holder to the practice of Medicine, the said Robert Broadwell and E. M. B. Owen well knew said representations to be false and were made with intent to defraud." (Emphasis added.)

The second count of the indictment is similar to the foregoing except as to the date of the offense.

The jury returned a verdict finding both defendants guilty as charged on two counts and they were then sentenced to the Ohio Penitentiary, the sentences on each count as to each defendant to run concurrently. Motions for new trial were filed and overruled and the case is here appealed on questions of law.

A brief condensation of the evidence presented by the State, as appears in the record, is as follows: On September 22, 1953, Robert J. Broadwell, who had come to Cleveland a few months previously, and E. M. B. Owen, of Arcadia, Missouri, conducted a meeting at the Hollenden Hotel, in Cleveland, attended by seven local chiropractors, whose presence was the result of certain solicitations and representations theretofore made by Broadwell. Broadwell and Owen both outlined a plan whereby by paying $1500, local chiropractors could obtain degrees in homeopathic medicine and licenses to practice in Ohio as doctors of medicine. Broadwell was to handle this "deal" in the Cleveland area, and the same program was being duplicated in other States.

Dr. Owen stated that he had recently acquired a new charter for the American Non-Allopathic University, Incorporated of Arcadia, Missouri, as the result of which his school was then in a position to issue diplomas in homeopathic medicine; that those chiropractors accepting his introductory offer were to pay $500 down and $1,000 not later than December 1, 1953, and furnish photostatic copies of their degrees and licenses in chiropractic or mechanotherapy and individual college credits; that if such applicants did not have college credits, he, Owen, would supply the deficiencies through a certain McKinley-Roosevelt School in Chicago, where for an additional $1,000, a four-year

college degree would be supplied without any attendance being required; that when their money and credits had been received, the applicants would be placed on Ownen's "preferred list," thus reserving one of thirty-six "select" places. They would immediately receive diplomas in homeopathic medicine from the American Non-Allopathic University of Arcadia, Missouri, without attendance or study, after which they would automatically receive licenses, issued in either Massachusetts, Connecticut, or Rhode Island, according to the applicant's choice, to practice as doctors in homeopathic medicine. Following this and after the applicant had taken a "fixed" total examination in four simple subjects: namely, public health, hygiene, prescription writing and homeopathic medicine, a license to practice homeopathic medicine would be issued by the Ohio State Medical Board.

Following this Hotel Hollenden meeting; namely, on October 30, 1953, Broadwall visited Dr. Centanni at his office and again went over the details of the "deal" in the presence of Robert Drake, a Cleveland Plain Dealer reporter, who was represented as being a chiropractor and interested in getting in on the deal. Broadwell instructed Dr. Centanni to draw a check for $500 payable to the American Non-Allopathic University and to submit therewith a list of his college credits. Dr. Centanni gave Broadwell a check for $500 as instructed, in an envelope on the outside of which were listed Dr. Centanni's college credits. Broadwell put the check and envelope in his pocket and left the office. By pre-arrangement with the police, he was arrested immediately, and when searched, the $500 check and the envelope were found on his person.

The police then questioned Broadwell, who admitted that he had visited Dr. Centanni at his office; that he was representing a school for the purpose of helping chiropractors obtain medical degrees; that he was from Missouri and was presently working at the Forest Hill Clinic in Cleveland; that he did not have a medical degree; that he was not licensed by the State of Ohio to practice as a Doctor; that he had the title of "Doctor" by reason of having attended a school in Missouri for a couple of weeks; that he was a representative of a certain Dr. Ownen, of Missouri "from the American Non-Allopathic University" and was here to recruit students and offer a course to help them obtain medical degrees; that the papers and credentials of such students were to be sent through the State of New Jersey, following which New Jersey would return the papers to Ohio for processing through the Ohio Medical Board so that the students could obtain doctors' medical licenses."

Defendant Broadwell testified in his own defense, but defendant Ownen did not testify.

While there are fifteen assignments of error attacking inter alia the sufficiency of the indictment, the rulings of the trial judge on motions, the admission or rejection of evidence, the charge of the court, the claims of error, both by way of brief and oral argument, principally involve the proposition urged by counsel for defendants throughout the trial, namely, that since there was no actual diploma published by the defendants, they could not be guilty of offering to sell something which was not theretofore in existence.

It is conceded by the State that there was no actual diploma de-

livered to any of the State's witnesses nor was any diploma actually exhibited to them. However, the gist of the crime charged by the State is that defendant "offered to sell false medical diploma(s)" in violation of §4731.47 R. C. Thus the question arises as to whether this is a crime within the prohibition of that section. The defendants contend that it is not; that the words "such diploma" immediately following the phrase "offer to sell" refer back to the first words of the statute, that is, to "make, issue or publish a diploma." This contention, we think, is highly technical and a strained construction of the statute which cannot be sustained in view of the precise wording of the statute. The statute, with reference to the words "offered to sell," reads as follows:

"No person shall * * * offer to sell + * * a diploma falsely representing the holder or receiver thereof to be a graduate of a medical school * * * etc."

To argue that the legislature contemplated the existence of an actual diploma before a person would be guilty of the offense of "offering to sell * * * a diploma falsely representing the holder thereof * * *, etc." is contrary to the purpose for which the statute was enacted. This is the very thing which the legislature was attempting to prevent. The offense of "offering to sell" in this case was just as serious and it was just as important to prevent the fraud at this stage of development as it would be at a later time when an actual diploma would have been issued. We cannot conceive of the legislature intending this additional element, namely, the issuance or publication of a false diploma, to be present before it could be said that a crime had been committed. The offense complained of was still present. The "offer to sell" had been made and the money had passed to the defendants on the basis of their "offer to sell." The following comments of the Supreme Court in the case of **State v. Healy, 156 Oh St 228, 240,** are equally applicable here:

"**Sec. 12447-1 GC,** was clearly designed and enacted for the purpose of protecting the innocent from ingenuous fraudulent schemes. and that purpose should not be thwarted by an interpretation which would in effect nullify its very salutary provisions.

"Courts will not by the strict construction of penal statutes defeat the intention of the lawmaker . . . A penal statute should receive a reasonable and common sense construction, and 'its force should not be frittered away by niceties and refinements at war with the practical administration of justice.' 2 Sutherland on Statutory Construction (2 Ed.), Section 528.

"The following statement in **37 O. Jur., 750, Section 422,** is supported by decisions of this court there cited:

. . . while criminal statutes are to be strictly construed in favor of the defendant, the courts are not authorized so to interpret them as to defeat the obvious purpose and intent of the legislature.

The defendants-appellants' claim that the offense set forth in the indictment, that is, "publish and offer to sell, etc." was not proved since there was no evidence that a diploma was even published, and, therefore, it should have been quashed, is without merit. If it is an offense to "offer to sell a diploma, etc." then the indictment is sufficient even

though it has included the words, "and publish." The offense, "offer to sell, etc." is marked in the statute by the disjunctive "or" but the indictment may substitute the conjunctive "and." **State v. Conner, 30 Oh St 405**; State v. Bauer 1 N. P. 103, 1 O. D. 199.

The alleged imperfection in the indictment may be excused by the following parts of §2941.08 R. C., which reads:

"An indictment or information is not made invalid, and the trial, judgment, or other proceedings stayed, arrested, or affected:

". . .

"(D) For stating imperfectly the means by which the offense was committed except insofar as means is an element of the offense;

". . .

"(I) For surplusage or repugnant allegations when there is sufficient matter alleged to indicate the crime and person charged;

". . .

"(K) For other defects or imperfections which do not tend to prejudice the substantial rights of the defendants upon the merits."

Sec. 2945.83 R. C., also applicable, provides:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:

"(A) An inaccuracy or imperfection in the indictment, information, or warrant, provided that the charge is sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him;

"(B) A variance between the allegations and the proof thereof unless the accused is misled or prejudiced thereby;

"(C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby;

"(D) A misdirection of the jury unless the accused was or may have been prejudiced thereby;

"(E) Any other cause unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

Next, it is argued that the hypothetical question propounded to Dr. Moritz was error prejudicial to the rights of the defendant. The error complained of by defendants is the assumption in the question propounded that there was a diploma in existence and that there was a diploma issued. Of course, that was not the fact but clearly it was the end result of the defendants' scheme if it had been consummated and that was the gist of the complaint contended in the indictment, namely, that what they were offering to sell was, in fact, a false diploma. Only by determining that what they were offering to sell was a diploma which was not genuine would the jury be able to determine their guilt or innocence. Under these circumstances, for the purpose of the hypothetical question alone, the assumption of an actual diploma and its issuance was proper.

Complaint is made as to the court's charge. We have examined the charge and find no error prejudicial to the defendants. To repeat,

the gravamen of the offense charged, that of "offering to sell," which by statute is made a crime and the indictment so charges.

The defendants object to the court's use of the word "diploma" in its charge since there was no showing that actually a diploma was issued to any of the state's witnesses. This is the same argument that is used throughout by the defendants. It is difficult to see how the court could possibly avoid the use of the word "diploma" when the gravamen of the offense charged and the gist of the evidence was that the defendants were "offering to sell a false medical diploma" and that is what the State's evidence shows that they attempted to do.

Upon a review of the entire record, we find no error prejudicial to the rights of the defendants and conclude that the judgment must be and is affirmed.

Exceptions. Order see journal.

KOVACHY, PJ, SKEEL, J, concur.